**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **THOMAS WAYNE WALLER** | **CIVIL ACTION NO. 19-1115** |
| | **SECTION P** |
| **VS.** | |
| | **JUDGE TERRY A. DOUGHTY** |
| **SHERIFF JAY RUSSELL, ET AL.** | **MAG. JUDGE KAREN L. HAYES** |

**REPORT AND RECOMMENDATION**

Plaintiff Thomas Wayne Waller, who proceeds pro se and in forma pauperis, filed the instant proceeding on approximately August 26, 2019, under 42 U.S.C. § 1983. He names the following defendants: the State of Louisiana, Sheriff Jay Russell in his official capacity, and Deputy John Doe in his individual and official capacities.[1] For reasons that follow, the Court should retain Plaintiff's racially-selective-law-enforcement claims against Sheriff Russell and Deputy John Doe, but the Court should dismiss the remaining claims.

**Background**

Plaintiff alleges that, on approximately July 5, 2019, at around 2:00 a.m., a deputy with the Ouachita Parish Sheriff's Office detained him without reasonable suspicion or probable cause. [doc. # 1, p. 2]. Plaintiff, an African American, was walking on Smith Street with a "white" female "back to her house" in West Monroe, Louisiana. [doc. #s 1, p. 2; 9, p. 1].

The deputy, who was in a vehicle traveling towards Plaintiff, "crossed the yellow line, brightened his headlights, blinded [Plaintiff], forced [Plaintiff] into a puddle of muddy water, and ordered [Plaintiff] to halt or stop." [doc. # 1, p. 3]. Plaintiff immediately "put [his] hands in the

---

[1] This matter has been referred to the undersigned for review, report, and recommendation under 28 U.S.C. § 636 and the standing orders of the Court.

air so [the deputy] could see [them] and [Plaintiff] wouldn't be shot down." *Id.* Plaintiff suggests that before he was identified, he was searched, "handcuffed, detained, and taken into custody for an old [failure-to-appear] warrant out of Lincoln Parish." [doc. #s 1, p. 3; 6, p. 3].

Plaintiff claims that the deputy stopped, detained, and searched him "for no apparent reason other than being an African American and walking with a female of the opposite race." [doc. #s 1, p. 3; 6, p. 4]. The officer "pat down" Plaintiff's clothing and searched inside his pockets. [doc. # 22, p. 1]. The officers "made offensive remarks as to why [Plaintiff] was with a white female . . . ." [doc. # 6, p. 3]. Plaintiff alleges that "the white female" was not searched, and she did not provide a driver's license or other identification. [doc. # 19, p. 3]. Officers then allowed her to leave after only requesting her name. [doc. # 22, p. 2].

Plaintiff was arrested for obstructing the roadway and for evading arrest by providing a false name and failing to provide identification. [doc. # 19, p. 3]. He was also arrested under a prior failure-to-appear warrant. *Id.* He pled guilty to evading arrest and was sentenced to "time served." [doc. #s 19, p. 3; 22, p. 4]. He was sentenced to one year of incarceration in connection with the failure-to-appear warrant. [doc. # 19, p. 3]. A judge dismissed the obstructing-the-roadway charge. *Id.* Plaintiff claims that the officer arrested him for obstructing the roadway only as pretext for "the illegal detainment and search." *Id.*

Plaintiff maintains that Sheriff Jay Russell "was not or did not have any actual participation in the event that led to [his] arrest . . . ." [doc. # 19, p. 1]. However, Plaintiff claims:

> Petitioner alleges liability of Jay Russell being the supervisor of deputy sheriff John Doe; John Doe was practicing policy and procedure that has been allowed by the Ouachita Sheriff's Dept. This agency has numerous civil actions for the same federal violations at [sic] constitutional rights of its citizens. There have been numerous civil actions for the same alleged violations in my complaint, and these civil actions have been brought under his leadership, under his

2

> administration while in office. The number is exceedingly high, too high to be looked at as isolated judgment on the individual officer. He is responsible for his deputies' racial profiling, and violations of civil rights, illegal stops and searches. This is a custom at the Sheriff [sic] Dept.

*Id.* at 1-2.

In his fifth pleading, Plaintiff claims that the State failed to credit him for four days of incarceration, which caused him to remain incarcerated four days beyond his release date. *Id.* at 4. He also claims that, while incarcerated, he lacked sufficient food and was forced to sleep on an unsanitary floor, causing him to endure additional back pain. *Id.*

Plaintiff claims that the discrimination he endured humiliated him, challenged his self-esteem, and caused him mental anguish, pain, suffering, emotional stress, and fear of further punishment due to his skin color. *Id.* at 2.

Plaintiff seeks punitive damages, reimbursement for court costs, declaratory relief, and $50,000.00 in compensatory relief. [doc. #s 1, p. 3; 6, p. 5; 12, p. 1; 22, p. 4]. He also asks the Court to order the Sheriff's Office to "implement a racial profiling training program" and to "discontinue these unfair practices." *Id.*

## Law and Analysis

**1. Preliminary Screening**

Because Plaintiff is proceeding in forma pauperis, his Complaint is subject to screening under § 1915(e)(2). Section 1915(e)(2)(B) provides for *sua sponte* dismissal of the complaint, or any portion thereof, if the Court finds it is frivolous or malicious, if it fails to state a claim on which relief may be granted, or if it seeks monetary relief against a defendant who is immune from such relief.

A complaint is frivolous when it "lacks an arguable basis either in law or in fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A claim lacks an arguable basis in law when it is

3

"based on an indisputably meritless legal theory." *Id.* at 327.  Courts are also afforded the unusual power to pierce the veil of the factual allegations and dismiss those claims whose factual contentions are clearly baseless.  *Id.*

A complaint fails to state a claim on which relief may be granted when it fails to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); accord *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009).  A claim is facially plausible when it contains sufficient factual content for the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 570).  Plausibility does not equate to possibility or probability; it lies somewhere in between.  *Id.*  Plausibility simply calls for enough factual allegations to raise a reasonable expectation that discovery will reveal evidence to support the elements of the claim. *Twombly*, 550 U.S. at 556.

Assessing whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal, supra.*  A well-pled complaint may proceed even if it strikes the court that actual proof of the asserted facts is improbable and that recovery is unlikely.  *Twombly, supra*.

Likewise, a complaint fails to state a claim on which relief can be granted if it appears that no relief could be granted under any set of facts that could be proven consistent with the allegations of the complaint.  In making this determination, the court must assume that all of the plaintiff's factual allegations are true.  *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998).  However, the same presumption does not extend to legal conclusions.  *Iqbal, supra.*  A pleading comprised of  "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" does not satisfy Rule 8.  *Id.*  "[P]laintiffs must allege facts that support the elements of

4

the cause of action in order to make out a valid claim." *City of Clinton, Ark. v. Pilgrim's Pride Corp*, 632 F.3d 148, 152-53 (5th Cir. 2010). Courts are "not free to speculate that the plaintiff 'might' be able to state a claim if given yet another opportunity to add more facts to the complaint." *Macias v. Raul A. (Unknown) Badge No. 153*, 23 F.3d 94, 97 (5th Cir. 1994).

A hearing need not be conducted for every pro se complaint. *Wilson v. Barrientos*, 926 F.2d 480, 483 n.4 (5th Cir. 1991).

"To state a section 1983 claim, a plaintiff must (1) allege a violation of a right secured by the Constitution or laws of the United States and (2) demonstrate that the alleged deprivation was committed by a person acting under color of state law." *Whitley v. Hanna*, 726 F.3d 631, 638 (5th Cir. 2013) (internal quotation marks omitted). Consistent with the standard above, a "[S]ection 1983 complaint must state specific facts, not simply legal and constitutional conclusions." *Fee v. Herndon*, 900 F.2d 804, 807 (5th Cir. 1990).

## 2. *Heck v. Humphrey*

Plaintiff claims that Deputy John Doe detained and searched him without reasonable suspicion or probable cause. He also claims that the officer falsified "the police report concerning obstruction of the highway," suggesting that the officer falsely arrested him for obstructing the highway. [doc. # 12, p. 1]. He was charged with, and subsequently pled guilty to, evading arrest by providing a false name and by failing to provide identification.[2] [doc. # 19, p. 3].

---

[2] The Ouachita Parish District Attorney informed the Court that Plaintiff pled guilty to resisting an officer. TELEPHONE CALL TO DISTRICT ATTORNEY, FOURTH JUDICIAL DISTRICT COURT (November 12, 2019). "Resisting an officer," under LA. REV. STAT. § 14:108, includes "[r]efusal by the arrested or detained party to give his name and make his identity known to the arresting or detaining officer or providing false information regarding the identity of such party to the officer."

5

Under *Heck v. Humphrey*, 512 U.S. 477 (1994), a successful civil rights action that would necessarily imply the invalidity of a plaintiff's conviction or sentence must be dismissed unless the plaintiff first shows that the conviction or sentence has been reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus.

Here, prevailing on the unlawful stop, unlawful search, and false arrest claims would necessarily imply the invalidity of Plaintiff's conviction for refusing to provide identification and furnishing a false name (i.e. resisting an officer). As to the unlawful stop claim, the Supreme Court held, in *Brown v. Texas*, 443 U.S. 47, 52 (1979), that because officers lacked reasonable suspicion to believe that the appellant was engaged in criminal conduct, requiring the appellant to identify himself violated the Fourth Amendment.[3] The Court concluded, "appellant may not be punished for refusing to identify himself, and the conviction is *Reversed.*" *Id.* at 53.

With respect to the ostensible false arrest claim, Plaintiff alleges that the officer charged him with obstructing the roadway only to "justify probable cause for the illegal detainment and search." [doc. # 19, p. 3]. Thus, prevailing on this claim would necessarily imply that the officer lacked reasonable suspicion and probable cause for detaining him, searching him, and then arresting him for resisting an officer.

Further, while Plaintiff does not allege that the officer located any incriminating evidence following the search or that any of his charges stemmed from the search, establishing that the officer lacked reasonable suspicion to conduct the search would likewise establish that the officer lacked reasonable suspicion to detain Plaintiff because Plaintiff suggests that both the

---

[3] See also *Wallace v. Kato*, 549 U.S. 384, n.5 (2007) ("[A] Fourth Amendment claim can necessarily imply the invalidity of a conviction . . . .") *Agard v. Sanders*, 2006 WL 2128079, at *3 (N.D. Tex. July 31, 2006) (finding that the plaintiff's unlawful traffic stop claim would, if proved, implicate the validity of his guilty plea because the evidence discovered following the stop would be subject to suppression).

stop and the search arose from the same pretextual reasonable suspicion: the alleged obstruction of the roadway. As above, establishing that the officer lacked reasonable suspicion to initially detain Plaintiff would necessarily imply the invalidity of Plaintiff's resisting-an-officer conviction.

Finally, Plaintiff alleges that Sheriff Russell maintained a custom or practice of illegally detaining and searching citizens, impliedly faulting Russell for the officer's alleged unlawful stop, search, and arrest. [doc. # 19, p. 2]. However, *Heck* bars this putative claim as well. See *Payton v. Normand*, 599 F. App'x 190, 192 (5th Cir. 2015) ("Because her underlying claim against [the acting deputies] is barred [under *Heck*], her claims against Sheriff Normand are likewise barred.") (citing *Rios v. City of Del Rio, Tex.,* 444 F.3d 417, 425 (5th Cir. 2006)); *Webb v. Owens*, 308 F. App'x 775, 776 (5th Cir. 2009) ("If *Heck* bars a challenge to the underlying constitutional violation, it also bars a challenge against a supervisor based upon that underlying constitutional violation.").

Plaintiff may not seek relief for the alleged unlawful stop, search, and arrest until his conviction is reversed, expunged, declared invalid, or called into question by a federal court's issuance of a writ of habeas corpus. The Court should dismiss these claims.[4]

---

[4] Plaintiff's claim under the Equal Protection Clause is not barred under *Heck*. That the officer (allegedly) intentionally detained and searched Plaintiff because Plaintiff was an African American does not mean that the officer lacked reasonable suspicion or probable cause to detain and search Plaintiff. By way of rudimentary example, an officer could have reasonable suspicion to detain two individuals of different races and choose to detain only one because of the individual's race.

"To state a claim of racial discrimination under the Equal Protection Clause and section 1983, the plaintiff must allege and prove that [he] received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a *discriminatory intent*." *Bowlby v. City of Aberdeen*, 681 F.3d 215, 227 (5th Cir. 2012) (emphasis supplied) (quoting *Priester v. Lowndes Cty.*, 354 F.3d 414, 424 (5th Cir. 2004) (internal quotation marks omitted)). Conversely, "Subjective intentions play no role in ordinary, probable-cause Fourth

7

### 3. Incarceration Beyond Release Date

In his fifth pleading, Plaintiff claims that the State failed to credit him for four days of incarceration, which caused him to remain incarcerated beyond his release date. [doc. # 19, p. 4].

Liability under 42 U.S.C. § 1983 only applies to "person[s]" who deprive others of rights secured by the Constitution. "[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Accordingly, the Court should dismiss Plaintiff's claim against the State of Louisiana.

### 4. Conditions of Confinement

Plaintiff alleges that, while incarcerated, he lacked sufficient food and was forced to sleep on an unsanitary floor, causing him to endure additional back pain. *Id.* It appears that he is simply describing what he was forced to endure as a result of the alleged unlawful stop, search, and arrest (i.e. describing his injuries). To the extent he raises a conditions-of-confinement claim, he does not specify or identify a responsible defendant. Accordingly, the Court should dismiss this claim.

### Recommendation

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiff Thomas Wayne Waller's claims of unlawful detainment, unlawful search, and false arrest be **DISMISSED WITH PREJUDICE** as frivolous until the *Heck* conditions are met.

**IT IS FURTHER RECOMMENDED** that, with the exception of Plaintiff's racially-

---

Amendment analysis." *Whren v. United States*, 517 U.S. 806, 813 (1996). Thus, prevailing on the claim that the officer intentionally discriminated against Plaintiff when the officer detained and searched him would not necessarily imply the invalidity of any conviction stemming from the stop or search.

selective-law-enforcement claims against Sheriff Russell and Deputy John Doe, Plaintiff's remaining claims be **DISMISSED** as frivolous and for failing to state claims on which relief may be granted.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen (14) days after being served with a copy of any objections or response to the district judge at the time of filing.

**Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error.** *See Douglass v. United Services Automobile Association*, **79 F.3d 1415 (5th Cir. 1996).**

In Chambers, Monroe, Louisiana, this 14th day of November, 2019.

_____
Karen L. Hayes
United States Magistrate Judge